**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ANGELA BARRY,

                Plaintiff,

v.                                CIVIL ACTION NO.  2:16-cv-09515

EXPERIAN INFORMATION SOLUTIONS, INC. et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Angela Barry ("Ms. Barry") and Robert Barry ("Mr. Barry") bring this action against Defendant Farm Bureau Bank FSB ("Farm Bureau") alleging various causes of action arising out of allegedly inaccurate information contained in credit reports requested by Plaintiffs.[1] Pending before the Court is Farm Bureau's Motion for Summary Judgment.[2] (ECF No. 121.) For the reasons discussed below, the Court **GRANTS** the motion.

*I.  BACKGROUND*

This case arises out of four disputed credit reports acquired by Plaintiffs from the website annualcreditreport.com.  Equifax Information Services, LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian") each provided a credit report for Mr. Barry through the

---

[1] Plaintiffs originally filed suit against the following Defendants: Experian Information Solutions, Inc., Equifax Information Services, LLC, JPMorgan Chase, The Huntington National Bank, and Farm Bureau.  However, Plaintiffs' claims have been compromised and settled with regard to all Defendants except Farm Bureau.  Therefore, Farm Bureau is the only named Defendant remaining in this litigation, and the Court will limit its discussion to the allegations brought against that entity.

[2] Also pending is Farm Bureau's Motion in Limine filed May 23, 2018.  (ECF No. 127.)  Because the current Memorandum Opinion and Order disposes of all claims against Farm Bureau, alleviating the need for trial, the Court **DENIES AS MOOT** that motion.

website on February 17, 2016. (*See* ECF No. 70-1 at 9–34, 48–52.) Subsequently, Equifax and Experian each provided a credit report for Ms. Barry via the same website on February 25, 2016. (*See id.* at 1–8, 44–47.) Plaintiffs disputed the contents of those reports and alleged that the two credit reporting agencies failed to correct them on two occasions. Following the dismissal of all Defendants except Farm Bureau, the remaining claims in this action bring into question the actions and inactions of Farm Bureau in the way it allegedly reported information to the credit agencies regarding Ms. Barry's reports.[3]

With respect to the Equifax report obtained on February 25, 2016, Ms. Barry alleges that the reports included multiple errors about an account under Plaintiffs' names with Farm Bureau. (*See* ECF No. 70 at ¶¶ 13, 15, 56.) Ms. Barry avers that information related to this account incorrectly identified an outstanding account balance and erroneously indicated that payments were past due. (*See id.* at ¶ 56.) She claims that this was not possible as the account was affected by Plaintiffs' Chapter 13 bankruptcy filed in November 2013 and the payment plan that resulted from it. (*See id.*; *see also id.* at 24 ¶ 1.) Ms. Barry first sent a dispute letter to Equifax on March 25, 2016, alerting the company of the alleged errors. (*Id.* at ¶ 57; *see also* ECF No. 70-1 at 35–36.) After Equifax supposedly failed to correct the report, Ms. Barry sent a second dispute letter

---

[3] In Plaintiffs' response to Farm Bureau's previously resolved motion to dismiss, they conceded that "Mr. Barry did not state a claim against Farm Bureau in Count II, as, upon information and belief, the credit reporting agency did not notify Farm Bureau of Mr. Barry's dispute." (ECF No. 80 at 2 n.1.) Farm Bureau reiterates that concession in the pending motion, (ECF No. 122 at 1 n.1), and Plaintiffs do not contest that point in the response. As such, the briefing only discusses Count II as brought by Ms. Barry. Thus, the Court will analyze Count II only as alleged by Ms. Barry and consider that count abandoned in part as originally brought against Farm Bureau by Mr. Barry.

Further, the Complaint does not allege that Mr. Barry's Experian credit report contained any error regarding the couple's Farm Bureau account. (ECF No. 70 at ¶ 79.) It only alleges that Mr. Barry's Equifax credit report contained errors related to the Farm Bureau account. (*Id.* at ¶ 15.) Because Plaintiffs concede that Equifax did not notify Farm Bureau of Mr. Barry's dispute, (ECF No. 80 at 2 n.1), Mr. Barry has no standing to pursue the remaining claims against Farm Bureau. Similar to Count II, the remaining Counts IV, V, and VI derive from disputed information raised only by Ms. Barry related to the Farm Bureau account. Accordingly, the Court will analyze the live claims as brought by Ms. Barry only. (*See also* ECF No. 125 at 1–2 (failing to argue in response to the pending motion that Mr. Barry has any remaining claim against Farm Bureau).) The Court notes that even if Mr. Barry had standing to pursue Counts IV, V, and VI against Farm Bureau because the account is a joint account in both Plaintiffs' names, his claims would fail for the same reasons discussed in this memorandum opinion.

to Equifax on June 30, 2016.  (ECF No. 70 at ¶ 67; *see also* ECF No. 70-1 at 39–40.)  Again, Ms. Barry alleges that Equifax failed to correct the report after the second dispute letter.  (ECF No. 70 at ¶ 69.)

As to the report furnished by Experian on February 25, 2016, Ms. Barry similarly alleges that her report contained errors regarding an account in her name with Farm Bureau.[4]  (*See id.* at ¶¶ 76, 99.)  She asserts that information related to that account wrongfully reported it as adverse and delinquent.  (*See id.* at ¶ 99.)  Again, Ms. Barry avers that the couple's Chapter 13 bankruptcy altered the nature of that account and that Experian's report failed to consider this.  Like with Equifax, Ms. Barry sent a dispute letter to Experian on March 25, 2016.[5]  (*Id.* at ¶ 100; *see also* ECF No. 70-1 at 53–54.)  Because Experian allegedly failed to correct the errors in the report, Ms. Barry sent to Experian a second dispute letter on June 30, 2016.  (ECF No. 70 at ¶ 110; *see also* ECF No. 70-1 at 57–58.)  Despite these letters, Ms. Barry claims that Experian still did not fix the errors contained in her credit report.  (ECF No. 70 at ¶ 112.)

Plaintiffs originally filed two separate actions in this Court on October 11, 2016.  (ECF No. 1; *see also* Civil Action No. 2:16-cv-09518, ECF No. 1.)  Upon motion by one of the previously terminated Defendants, the Court consolidated the two cases on April 25, 2017, and ordered Plaintiffs to file a consolidated complaint in the above-styled civil action, which serves as

---

[4] Defendant's motion states that "[t]he alleged factual bases for [Ms. Barry's] claims are that Farm Bureau incorrectly re-verified information about [her] auto loan account to a consumer credit reporting bureau, namely, Equifax . . . ." (ECF No. 122 at 1–2.)  The motion's supporting memorandum of law goes on to provide a statement of alleged facts only as they relate to the Equifax credit report.  (*See id.* at 2–3.)  The Complaint, however, also contains factual allegations related to information in the Experian credit report, claiming that "Farm Bureau received a copy of all disputes provided to Experian by [Ms. Barry] and incorrectly, negligently, or intentionally verified them as true and accurate without conducting an adequate investigation."  (ECF No. 70 at ¶¶ 99–118; *see also* ECF No. 122 at 3.)  Thus, it appears to the Court that Ms. Barry's causes of action stem from information regarding the Farm Bureau account in both the Equifax and Experian credit reports.  While very similar in nature, the allegations will be considered as they relate to both credit reports.

[5] While the Complaint writes "Equifax" in the allegations contained in Paragraphs 120 through 137, the Court assumes these are typos as those paragraphs relate to conduct alleged against Experian.  Thus, the Court will read those paragraphs as referring to Experian.

the lead case. (ECF No. 67.) The consolidated complaint (the "Complaint") subsequently was filed on May 10, 2017. (ECF No. 70.) Ms. Barry alleges the following four counts against Farm Bureau in the Complaint: (II) violations of the federal Fair Credit Reporting Act ("FCRA"); (IV) defamation; (V) violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"); and (VI) a violation of 11 U.S.C. § 362(a) for defying the stay triggered by Plaintiffs' Chapter 13 bankruptcy proceedings. (*Id.* at ¶¶ 144–156, 164–175; *see also id.* at 24–25 ¶¶ 1–9.) Ms. Barry demands a wide array of relief, including actual, statutory, and punitive damages, in addition to attorney's fees and costs and "other relief as the Court shall deem just and proper under the attendant circumstances." (*Id.* at 25–26.)

Farm Bureau filed its Motion for Summary Judgment on March 15, 2018. (ECF No. 121.) Plaintiffs responded to the motion on March 29, 2018, (ECF No. 125), and Farm Bureau filed its reply in support of the motion on April 5, 2018, (ECF No. 126). As such, the motion is fully briefed and ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating such factual issues, the Court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

## III. DISCUSSION

Farm Bureau's motion challenges all four counts directed toward it in the Complaint: Counts II, IV, V, and VI. With regard to Count II, which alleges a cause of action under the FCRA, Farm Bureau argues that the information it provided to the credit reporting bureau[6] both before and after Ms. Barry disputed the information was accurate and, thus, was not "inaccurate" for purposes of the FCRA. (ECF No. 122 at 4–5.) Farm Bureau further argues that the defamation and WVCCPA claims alleged in Counts IV and V, respectively, are preempted by the FCRA. (*Id.* at 5–7 (citing 15 U.S.C. §§ 1681h(e), 1681t(b)(1)(F)); *see also id.* at 9–10 (citing *Evans v. Trans Union LLC*, No. 2:10–cv–00945, 2011 WL 672061, at *1 (S.D. W. Va. Feb. 14, 2011)).) Finally, the motion argues that the allegations contained in Count VI regarding violation of the stay under 11 U.S.C. § 362(a) cannot be addressed by this Court as it lacks subject-matter jurisdiction to consider the claim. (*Id.* at 7–9, 10.) Alternatively, Farm Bureau avers that the automatic stay does not prevent Farm Bureau from accurately reporting deficiencies to a credit reporting agency and

---

[6] Again, the Court notes that Farm Bureau only discusses the allegations as they arise pursuant to the Equifax credit report. The Court, nonetheless, will consider Ms. Barry's claims as related to both the Equifax and Experian reports.

that Ms. Barry has not alleged any intent to violate the stay as required by statute. (*Id.* (citing 11 U.S.C. § 362(k)(1))[7].)

### A. *Count II: Violations of the FCRA*

Finding that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system," Congress enacted the FCRA in 1970 to promote the accuracy and fairness of credit reporting. 15 U.S.C. § 1681(a)(1). Section 623 of the FCRA sets forth specific requirements for "furnishers of information to consumer reporting agencies," including obligations to provide accurate information initially to those agencies and a continuing duty to investigate and report corrections to the agencies regarding any disputed information. *See* § 1681s-2(a), (b). Notably, "the FCRA does not impose upon furnishers a duty to report credit information at all; instead, the FCRA dictates how and under what circumstances information may be reported, if a furnisher so chooses." *Evans*, 2011 WL 672061, at *3. As Farm Bureau correctly notes in its supporting memorandum, the "FCRA explicitly bars private suits for violations of § 1681s-2(a), but consumers can still bring private suits for violations of § 1681s-2(b)." *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008); *see also Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431–33 (4th Cir. 2004).

Following notice from a consumer reporting agency that someone has disputed "the completeness or accuracy of any information" provided in a credit report, § 1681s-2(b) obliges information furnishers to "conduct an investigation with respect to the disputed information" and report inaccuracies to all consumer reporting agencies to which it provides information. *See*

---

[7] Farm Bureau's brief cites to "15 U.S.C. § 362(k)(1)." (ECF No. 122 at 10.) However, the Court assumes that Farm Bureau intended to cite to the relevant section of the U.S. Bankruptcy Code at 11 U.S.C. § 362 dealing with automatic stays rather than a repealed chapter of the Code related to the now defunct War Finance Corporation.

§ 1681s-2(b)(1)(A).  Further, furnishers must "review all relevant information provided by the consumer reporting agency pursuant to [§ 1681i]," which states that the agency must notify all relevant information furnishers within five business days from receiving notification of a consumer's dispute.  *See* §§ 1681i(a)(2), 1681s-2(b)(1)(B).  Upon notice of the dispute, the furnisher has thirty days to review the information, complete its investigation, and report any corrected information.[8]  The furnisher's duty to investigate is triggered once the consumer reporting agency notifies it of the dispute.  *See, e.g.*, *Mavilla v. Absolute Collection Serv., Inc.*, 539 F. App'x 202, 208 (4th Cir. 2013) (per curiam) (unpublished opinion) (citations omitted).  The private right of action afforded by the FCRA applies to willful or negligent noncompliance with either § 1681i or § 1681s-2(b).  *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) (citing 15 U.S.C. §§ 1681n, o).

---

[8] Section 1681s-2(b)(1) provides, in full, the following:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
>
> (A)   conduct an investigation with respect to the disputed information;
>
> (B)   review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C)   report the results of the investigation to the consumer reporting agency;
>
> (D)   if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E)   if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
>> (i)   modify that item of information;
>>
>> (ii)   delete that item of information; or
>>
>> (iii)   permanently block the reporting of that item of information.

Here, Farm Bureau admits to furnishing information to consumer reporting agencies, (ECF No. 122 at 4), signifying that it must abide by the applicable requirements in 15 U.S.C. § 1681s-2. The briefing solely focuses on whether Farm Bureau's reporting, as a matter of law, was accurate under the FCRA and does not contest the adequacy of Farm Bureau's investigations. (*See* ECF No. 122 at 4–5; ECF No. 125 at 2–3.) While at least one district court has held that "[t]he inaccuracy of furnished information, without evidence that the furnisher's investigation was unreasonable, does not create liability by itself," *Phillips v. Trans Union, LLC*, No. 3:16-CV-00088, 2017 WL 3911018, at *5 (W.D. Va. Sept. 6, 2017) (citing *Johnson*, 357 F.3d at 431; *Blick v. Wells Fargo Bank, N.A.*, No. 3:11-CV-00081, 2012 WL 1030137, at *9 (W.D. Va. Mar. 27, 2012), *aff'd*, 474 F. App'x 932 (4th Cir. 2012)), other courts have noted that plaintiffs must make an initial showing "that an actual inaccuracy exist[s]" to state a claim under the FCRA, *see Keller v. Experian Info. Sols., Inc.*, No. 16-CV-04643-LHK, 2017 WL 130285, at *5 (N.D. Cal. Jan. 13, 2017) ("[E]ven if a furnisher or [credit reporting agency] fails to conduct a reasonable investigation or otherwise fails the fulfill its obligations under the FCRA, if a plaintiff cannot establish that a credit report contained an actual inaccuracy, then the plaintiff's 'claims fail as a matter of law.'" (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010))); *see also Hernandez v. Wells Fargo Home Mortg.*, No. 2:14-CV-1500 JCM, 2015 WL 1204985, at *2–3 (D. Nev. Mar. 16, 2015), *aff'd*, 713 F. App'x 702 (9th Cir. 2018). Regardless of which approach prevails, however, Ms. Barry's claim under Count II cannot survive summary judgment.

Based upon the parties' arguments in the briefing, the question here boils down to whether Farm Bureau's reporting of information indicating that Ms. Barry's account was past due, adverse, and/or delinquent despite the account's inclusion in and payments made in accordance with her

Chapter 13 bankruptcy plan is accurate under the FCRA.[9]  In answering that question in the affirmative, the Court notes that the Fourth Circuit has not directly addressed this issue but finds instructive a line of cases from the Northern District of California.  Those cases, totaling "approximately 170 nearly identical cases," involved the following factual scenario:

> [E]ach plaintiff filed for Chapter 13 bankruptcy protection, whereupon a bankruptcy court confirmed a financial reorganization plan.  Thereafter, each plaintiff assert[ed] that they ordered credit reports which showed effectively "inaccurate, misleading, or incomplete" information for accounts that were included in their confirmed bankruptcy plans.  Despite each plaintiff notifying the credit reporting agencies of the alleged inaccuracy, they assert[ed] that their credit reports continued to show the inaccurate account information.

*Mamisay v. Experian Info. Sols., Inc.*, No. 16-CV-05684-YGR, 2017 WL 1065170, at *3 (N.D. Cal. Mar. 21, 2017).  The legal question at the summary judgment stage of litigation became whether the FCRA "prohibit[ed] defendants from reporting historically accurate information about delinquent accounts—such as the account's outstanding balance—*after* a Chapter 13 bankruptcy plan is confirmed, *but* before the debt has been discharged."  *Id.* (emphasis in original).

In analyzing the effect of a Chapter 13 confirmation order, the court in *Mamisay* found that it did not absolve or erase debt owed to a financial institution.  *Id.* at *5.  The court reasoned that,

---

[9] Again, while the briefing does not touch on the adequacy of Farm Bureau's investigation upon notification of the dispute, *see* 15 U.S.C. § 1681s-2(b)(1), the Court finds it prudent to briefly discuss that issue here.  The Fourth Circuit added a qualitative component to the investigation requirement set forth in § 1681s-2(b)(1) in *Johnson v. MBNA America Bank, NA*, requiring creditors "to conduct a *reasonable* investigation" upon receiving notice of a consumer dispute.  *See* 357 F.3d 426, 430–31 (4th Cir. 2004) (emphasis added).  "This determination whether a furnisher's investigation was 'reasonable' is based on an evaluation of information within the furnisher's possession, such as correspondence between the consumer and the furnisher, the data identified by the reporting agency as disputed, and the furnisher's other records relating to the disputed account."  *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 253 (4th Cir. 2017) (per curiam) (unpublished opinion) (citation omitted).

While the question of whether a furnisher's investigation is reasonable typically becomes a question for the jury, *see Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 416 (4th Cir. 2001), summary judgment is still appropriate when only one conclusion about the conduct's reasonableness is possible, *see In re Software Toolworks Inc.*, 50 F.3d 615, 622 (9th Cir. 1994).  Here, Ms. Barry summarily alleges in the Complaint that Farm Bureau did not conduct an adequate investigation.  (*See* ECF No. 70 at ¶¶ 64, 74, 106, 117.)  Despite these allegations, Ms. Barry has failed to introduce any evidence describing Farm Bureau's investigation and does not provide factual allegations demonstrating what about the investigation was unreasonable.  Even if Ms. Barry had advanced the point in her response to the pending motion, there is no support in the record for this allegation and, thus, it cannot amount to a "genuine dispute" at this stage of the litigation, *see News & Observer Publ. Co.*, 597 F.3d at 576; *Barwick*, 736 F.2d at 958.

for example, a bankruptcy petition could be dismissed if the debtor fails to comply with the plan, meaning the debt would then be owed as if bankruptcy was never filed. *See id.* As such, "the legal status of a debt does not change until the debtor is discharged from bankruptcy." *Id.* (citations omitted); *see also* 11 U.S.C. § 1328(a) (providing that if a Chapter 13 debtor successfully completes all payments under a confirmed plan, the indebtedness is discharged). Taken one step further, it would not be inaccurate to report a debt's balance as outstanding or the account as delinquent subsequent to a Chapter 13 plan's confirmation, but before the debt has been discharged, if the debtor no longer makes the payments required under the loan schedule. *See Mamisay*, 2017 WL 1065170, at *4–7 & n.8; *see also Mosley v. Monterey Fin. Servs., LLC*, No. 1:16-cv-03614-MHC-AJB, 2017 WL 8186861, at *4 (N.D. Ga. May 10, 2017) ("[R]eview of the cases cited by both parties and unearthed in the Court's own research has shown that district courts . . . have repeatedly and persuasively rejected the argument that it is 'inaccurate or misleading' as a matter of law simply to report delinquent debts that have not been discharged in bankruptcy.") (collecting cases).

Here, the Complaint and Ms. Barry's response to the motion repeatedly state that the Farm Bureau account could not be adverse and delinquent as reported "because the account is being paid through the Plaintiffs' Chapter 13 plan . . . ." (ECF No. 70 at ¶¶ 99–100, 108, 111; ECF No. 125 at 2–3.) Ms. Barry argues that "reporting of the loan as past due and delinquent based on the pre-confirmation terms was inaccurate" and that "reporting the account as past due during the Chapter 13 bankruptcy was, at the very least, incomplete." (ECF No. 125 at 3; *see also* ECF No. 70-1 at 40 ("The Farm Bureau Bank FSB account . . . should be showing paid on time through a Chapter [13] plan or it should stop as of the date of the filing [of] the Chapter 13 [confirmation], and indicate it is being paid through the plan.").) However, the cases cited above that the Court finds

persuasive run counter to that proposition. Even if Ms. Barry only technically fell behind on her loan payments because the monthly payment under the Chapter 13 plan did not satisfy the monthly payment she originally promised to pay Farm Bureau under the loan's terms, (*see* ECF No. 122 at 8), the rationale previously discussed leads the Court to conclude that the information reported still is not inaccurate. Again, the entry of a confirmation order does not change the debt's legal status. *See, e.g.*, *Mamisay*, 2017 WL 4065170, at *5. A Chapter 13 plan *allowing* Ms. Barry to pay the loan at a lower monthly rate does not concurrently insinuate that the account cannot become delinquent; under the plan she is no longer making payments according to the loan's terms.

Using the case law's reasoning, if Ms. Barry fails to make the payments as prescribed under the bankruptcy plan and it subsequently is dissolved, then she would be held to the loan's terms as if she never filed bankruptcy. *See id.* In that scenario, her account would be overdue at an amount representing the difference between the payments made under the bankruptcy plan and the payments that she originally agreed to pay during the plan's existence. Further, other district courts have rejected the proposition advanced by Ms. Barry that the failure to report that an account is included in a Chapter 13 bankruptcy proceeding is incomplete for purposes of the FCRA. *See, e.g.*, *Doster v. Experian Info. Sols., Inc.*, No. 16-CV-04629-LHK, 2017 WL 264401, at *5 (N.D. Cal. Jan. 20, 2017) ("[E]ven if Plaintiff is correct that Plaintiff's credit report did not reflect the terms of Plaintiff's Chapter 13 bankruptcy plan, this would not be an inaccurate or misleading statement that could sustain a FCRA claim . . . .").

For these reasons, the Court finds that Ms. Barry has failed to show an inaccuracy in Farm Bureau's reporting of her account. As there is no inaccuracy under the FCRA, Ms. Barry's claim pursuant to 15 U.S.C. § 1681s-2(b) must fail. *Cf. Chiang v. Verizon New England Inc.*, 595 F.3d 26, 41 (1st Cir. 2010) ("Chiang was required to present evidence of actual inaccuracies in his

account . . . . He has not done so. . . . For this reason, too, summary judgment was appropriate on Chiang's FCRA claim."). Accordingly, the Court **GRANTS** summary judgment to Farm Bureau on Count II.

*B. Count IV: Defamation*

Farm Bureau argues in its motion that Ms. Barry's defamation claim is preempted by the FCRA. (ECF No. 122 at 5–7.) The FCRA contains two preemption provisions applicable to the duties of information furnishers enumerated in 15 U.S.C. § 1681s-2, and each of the two has been amended since the FCRA's implementation. *See* 15 U.S.C. §§ 1681t(b), 1681h(e). Section 1681t(b) provides the following:

> No requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under . . . (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

15 U.S.C. § 1681t(b)(1)(F). Section 1681h(e), on the other hand, states as follows:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). "These two preemption provisions are in apparent conflict: while § 1681t(b)(1)(F) *seems* to preempt all state laws regarding the liability of information furnishers, [§] 1681h(e) preempts only certain types of common law actions against information furnishers, and then only under certain circumstances." *See Evans*, 2011 WL 672061, at *4 (emphasis in original) (noting that "the Fourth Circuit has not squarely resolved this apparent conflict").

In *Evans*, this Court followed what is known as the "statutory approach" in reconciling the two preemption provisions. It concluded "that Congress intended § 1681t(b)(1)(F) to fully preempt state statutory causes of action related to information furnishers . . . and § 1681h(e) to preempt only certain state common law causes of action." *Id.* at *6 (citing *Barnhill v. Bank of Am., N.A.*, 378 F. Supp. 2d 696, 703–04 (D.S.C. 2005) (noting that "there is [uniform] support for this approach among the district courts within the United States Court of Appeals for the Fourth Circuit and in two unpublished opinions by the Fourth Circuit"); *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1376 (N.D. Ga. 2004)). Contrary to Farm Bureau's interpretation of the preemption provisions,[10] this Court follows its previous judgment and again finds that because § 1681t(b)(1)(F) applies only to state statutory claims and not common law claims, that preemption provision cannot preempt the defamation claim against Farm Bureau. Thus, if Farm Bureau is to succeed on its preemption argument, then Ms. Barry's defamation cause of action must be preempted by § 1681h(e). *Cf. id.* at *6–7.

Two inquiries are necessary when determining whether § 1681h(e) preempts the defamation cause of action here:

> First, we ask whether the claim falls within the scope of § 1681h(e), which includes only claims "based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report." [As a general rule, state common law claims based on

---

[10] In arguing that common law causes of action alleging malice and intent are preempted by § 1681t(b)(1)(F) despite the limiting language of § 1681h(e), Farm Bureau relies exclusively on *MacPherson v. JP Morgan Chase Bank*, a case in which the Second Circuit expressly declined to follow the statutory approach that this Court adopted in *Evans*. (*See* ECF No. 122 at 6–7 (citing 665 F.3d 45 (2d Cir. 2011)).) As the Eastern District of Virginia noted in 2015, "seven of the nine district courts in the Fourth Circuit [including the Southern District of West Virginia] have reconciled the apparent conflict between these two preemption provisions by adopting the 'statutory approach'—holding that § 1681t(b)(1)(F) only applies to state statutory claims and that § 1681h(e) only addresses state common law claims." *Hazaimeh v. U.S. Bank Nat'l Ass'n*, 94 F. Supp. 3d 741, 753 (E.D. Va. 2015) (internal quotation marks omitted) (citation omitted) (recognizing again that "the Fourth Circuit has not conclusively ruled on the issue"). Farm Bureau fails to argue why this Court should adopt a 2011 holding from the Second Circuit over numerous decisions of district courts within the Fourth Circuit, including this Court's prior ruling in *Evans*. Curiously, Farm Bureau nonetheless relies on *Evans* to argue that Ms. Barry's cause of action brought pursuant to the WVCCPA in Count V is preempted. (*See* ECF No. 122 at 9–10.)

information disclosed pursuant to those provisions are preempted.] The second step in the analysis involves determining whether the "malice or willful intent to injure" exception to the general bar against state law actions applies. [If the exception applies, the claims are not preempted.]

*Id.* at *7 (alterations in original) (quoting *Ross v. F.D.I.C.*, 625 F.3d 808, 814 (4th Cir.) (citing 15 U.S.C. § 1681h(e)), *cert. denied*, 564 U.S. 1006 (2010), *rehearing denied*, 564 U.S. 1059 (2011)); *see also Short v. Experian Info. Sys., Inc.*, No. 2:16-cv-09294, 2017 WL 2296887, at *4–5 (S.D. W. Va. May 25, 2017).

As to the first part of the inquiry, the cause of action must be "based on disclosures pursuant to 15 U.S.C. §§ 1681g, 1681h, or 1681m, or 'by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report.'" *Evans*, 2011 WL 672061, at *7 (quoting § 1681h(e)). Sections 1681g and 1681h apply only to consumer reporting agencies, which Farm Bureau is not. *Cf. Ross*, 625 F.3d at 814. Further, § 1681m applies only to "users taking adverse actions on [the] basis of information contained in consumer reports," and Farm Bureau does not appear to be such a user of consumer reports vis-à-vis Ms. Barry here; the bank neither used Ms. Barry's credit reports nor took adverse action based on the information contained therein. *Cf. id.* Because the general bar on tort actions is triggered only in matters described above and Ms. Barry's allegations do not fit within those enumerated scenarios, the Court need not reach the second step in the analysis regarding malice or willful intent. Based on the statutory approach, Ms. Barry's defamation claim is not preempted by the FCRA.

Because the Court has determined that Count IV is not preempted as Farm Bureau argues, a substantive analysis of the cause of action becomes necessary. In West Virginia, a plaintiff like Ms. Barry must prove the following elements to succeed on a defamation action: "(1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." Syl. pt. 1,

*Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70 (W. Va. 1983). "A statement may be described as defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Id.* at 77 (citations omitted). Defendants can avoid all liability by proving a defense based on either privilege or truth. *See id.* at 77–78 (explaining the differences between absolute and qualified privilege).

In the above section, the Court found that the information furnished by Farm Bureau to the credit reporting agencies was accurate and truthful under the law. *See* discussion *supra* Section III.A. This information is what Ms. Barry claims gives rise to her defamation cause of action. (*See* ECF No. 70 at ¶¶ 165–167.) However, because the information was not false, Ms. Barry cannot meet the element of falsity. Further, Farm Bureau can avoid liability under common law defamation because it has shown that the communication was true and that it was published "with good motives, and for justifiable ends." *Crump*, 320 S.E.2d at 79 (quoting *Michaelson v. Turk*, 90 S.E. 395, 398 (W. Va. 1916) (Mason, J., dissenting)). Ms. Barry has not provided evidence to the contrary, and her defamation claim therefore fails. Accordingly, the Court **GRANTS** summary judgment to Farm Bureau on Count IV.

### C. Count V: Violations of the WVCCPA

In the discussion above regarding Count IV, the Court set forth 15 U.S.C. § 1681t(b)(1)(F), which expressly preempts any state law "with respect to any subject matter regulated under . . . Section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." In Count V of the Complaint, Ms. Barry alleges violations of the WVCCPA because Farm Bureau "ma[de] a false representation of the character, extent, and amount of their claims against the Plaintiffs" and "by communicating that [she] willfully refused to pay a debt." (ECF No. 70 at ¶¶ 173–174.) These assertions are related directly to Ms. Barry's

factual allegations regarding Farm Bureau's furnishing of information to Equifax and Experian,[11] (*see id.* at ¶¶ 56–75, 99–118), which is directly regulated by the FCRA. *See* 15 U.S.C. § 1681s-2. Because Count V constitutes a claim arising under West Virginia statute and relates to Farm Bureau's furnishing of credit information to consumer reporting agencies, it "runs into the teeth of the FCRA preemption provision." *Ross*, 625 F.3d at 813; *cf. Short*, 2017 WL 2296887, at *6 (finding that a proposed amendment to the complaint adding claims under the WVCCPA would be futile as they were preempted by the FCRA, 15 U.S.C. § 1681t(b)(1)(F)); *Horton v. Synchrony Bank*, No. 5:16-cv-08512, 2016 WL 6582990, at *2–3 (S.D. W. Va. Nov. 4, 2016) (citing this Court's discussion in *Evans* to support its conclusion dismissing plaintiffs' WVCCPA claims as preempted by § 1681t(b)(1)(F)); *White*, 118 F. Supp. 3d at 872. Consequently, Ms. Barry's WVCCPA claims are preempted by the FCRA, and the Court **GRANTS** summary judgment to Farm Bureau on Count V.

### Count VI: Violation of the Automatic Stay

"[T]he filing of a bankruptcy petition operates immediately to stay creditors from pursuing certain enumerated collection actions against the debtor or the debtor's estate." *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 480 (4th Cir. 2015) (citing 11 U.S.C. § 362(a)). Prior to 1984, the U.S. Bankruptcy Code did not prescribe a sanction for creditors who violated the automatic stay in § 362(a). *Id.* at 481 ("The Bankruptcy Code simply gave the bankruptcy court authority to administer the proscription."). Via amendment, Congress created a private cause of action to rectify the willful violation of a stay. Section 362(k) sets forth the following:

---

[11] Ms. Barry argues in the response to Farm Bureau's motion that the Complaint "allege[s] that Defendant violated the WVCCPA by attempting to collect a debt that was not owed and by making misleading representations in attempt to collect a debt." (ECF No. 125 at 5.) That argument is in stark contrast to the factual allegations in the Complaint, and the Court does not read the Complaint as asserting any cause of action related to debt collection activity by Farm Bureau. Thus, the Court rejects Ms. Barry's characterization of her claims in the response.

(1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

(2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.[12]

11 U.S.C. § 362(k).

While Congress failed to specify which courts may exercise jurisdiction over a claim brought pursuant to § 362(k), the 1984 amendments[13] gave district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11," 28 U.S.C. § 1334(b). Even in light of this jurisdictional power, Congress authorized district courts to refer any such cases or proceedings to bankruptcy judges. *See* 28 U.S.C. § 157(a); *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2171 (2014). "In no circumstance, however, did the Act, in conferring such adjudicatory authority, give a bankruptcy court jurisdiction *to the exclusion* of a district court." *Houck*, 791 F.3d at 481 (emphasis in original). Therefore, the Fourth Circuit has held that "[a] claim under § 362(k) for violation of the automatic stay is a cause of action arising under Title 11, and as such, a district court has jurisdiction over it." *Id.* at 481–82 (noting that even if the district court has a standing referral order pursuant to 28 U.S.C. § 157(a) providing that all bankruptcy matters are referred to the bankruptcy judge, that standing referral order is not jurisdictional and "does not implicate subject matter jurisdiction").

---

[12] Subsection (h) sets out circumstances in which the automatic stay terminates with respect to personal property and is not at issue here. *See* 11 U.S.C. § 362(h).

[13] Congress implemented these amendments via the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98353, 98 Stat. 333 (codified in scattered sections of 11 and 28 U.S.C.).

In sum, while this Court has the authority to refer a cause of action arising under Title 11 to the bankruptcy court pursuant to Local Rule of Civil Procedure 83.13,[14] that discretionary right does not deprive this Court of its original jurisdiction granted in 28 U.S.C. § 1334 to hear Ms. Barry's cause of action. *See id.* (citing *Justice Cometh, Ltd. v. Lambert*, 426 F.3d 1342, 1343 (11th Cir. 2005); *Price v. Rochford*, 947 F.2d 829, 832 n.2 (7th Cir. 1991)). Insofar as Farm Bureau asserts that this Court lacks subject-matter jurisdiction over Count VI and that the claim must be brought in bankruptcy court, (*see* ECF No. 122 at 7 (relying on *E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 121 (2d Cir. 2001))), that argument is adverse to Fourth Circuit precedent.

Farm Bureau alternatively argues that even if this Court has jurisdiction to hear the cause of action alleged in Count VI, the automatic stay does not prevent it from accurately reporting account deficiencies to credit reporting agencies and, further, that Ms. Barry has failed to allege any intent to violate the stay. (*See id.* at 8–9, 10 ("Notably, the Plaintiff's Consolidated Complaint is void of any allegations that Farm Bureau willfully violated the automatic stay.").)

"To recover under § 362(k), a plaintiff must show (1) that the defendant violated the stay imposed by § 362(a), (2) that the violation was *willful*, and (3) that the plaintiff was injured by the violation." *Houck*, 791 F.3d at 484 (emphasis in original) (citing *Garden v. Cent. Neb. Hous. Corp.*, 719 F.3d 899, 906 (8th Cir. 2013)). Failure to satisfy any one of the three elements is fatal to Ms. Barry's claim.

---

[14] That local rule provides, in part, the following:

> Pursuant to 28 U.S.C. § 157(a), all cases under Title 11, and all proceedings arising under Title 11 or arising in or related to a case under Title 11, are referred to the Bankruptcy Court for disposition.

L.R. Civ. P. 83.13.

First, Ms. Barry must prove that Farm Bureau violated the automatic stay imposed by

§ 362(a). Section 362 of Title 11 provides, in pertinent part, the following:

(a)  Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1)    the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2)  the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3)  any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4)  any act to create, perfect, or enforce any lien against property of the estate;

(5)  any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6)  any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7)    the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8)  the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

11 U.S.C. § 362(a). Subsection (b) specifies numerous procedures to which the automatic stay

does not operate, none of which is applicable in this case. *See* § 362(b)(1)–(28). Therefore, Ms.

Barry must first prove that Farm Bureau engaged in one of the eight enumerated actions in § 362(a).

The Complaint alleges that Farm Bureau violated § 362(a) by "report[ing] to the credit bureaus that [Ms. Barry's] account was delinquent even though it is current, has been paid and is being paid through [her] Chapter 13 plan." (ECF No. 70 at 24 ¶ 7.) First, Farm Bureau's act of furnishing information to credit reporting agencies in no way involves "a judicial, administrative, or other action or proceeding against" Ms. Barry. It also does not implicate the enforcement of any judgment against Ms. Barry. Farm Bureau has not attempted to obtain possession over any of Ms. Barry's property or create or enforce a lien over the same. Further, the factual allegations never state that Farm Bureau sought to "collect, assess, or recover a claim against" Ms. Barry, nor do they allege that this case involves the setoff of any debt owing to her. Finally, this action does not involve a proceeding before the United States Tax Court. Given these observations, Ms. Barry has not alleged and, thus, cannot prove, that Farm Bureau has violated any subsection of 11 U.S.C. § 362(a).

Ms. Barry's claim that Farm Bureau violated the stay is based on the allegation that Farm Bureau furnished inaccurate information. However, as the Court concluded above, the information provided to the credit reporting agencies was not inaccurate under the FCRA. *See* discussion *supra* Section III.A. Ms. Barry has not proven that Farm Bureau violated § 362(a) by either furnishing inaccurate information or otherwise violating one of the enumerated subsections of the statute. As such, the Court **GRANTS** summary judgment to Farm Bureau on Count VI.

## *IV. CONCLUSION*

For the reasons stated above, Farm Bureau's Motion for Summary Judgment, (ECF No. 121), is **GRANTED**.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     July 5, 2018

_____

THOMAS E. JOHNSTON, CHIEF JUDGE